NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WORLD EXPRESS & CONNECTION, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CROCUS INVESTMENTS, LLC, CROCUS FZE, ALEXANDER SAFONOV, and MIDDLE EAST ASIA ALFA FZE, | : | Civil Action No. 15-8126 (KM) (MAH) |
| | : | |
| Defendants/Third Party Plaintiffs, | : | |
| | : | |
| MARINE TRANSPORT LOGISTIC INC., ROYAL FINANCE GROUP, INC., CAR EXPRESS & IMPORT INC., ALEKSANDR SOLOVYEV, VADIM ALPER a/k/a DIMITRY ALPER, ALLA SOLOVYEVA, RAYA BAKHIREV, and ROMAN CHERNIN, | : | OPINION |
| | : | |
| Third Party Defendants. | : | |

**HAMMER, United States Magistrate Judge**

I.     **Introduction**

    This matter comes before the Court on the Defendants'/Third-Party Plaintiffs' motion to amend the Third-Party Complaint to include additional factual allegations and a cause of action under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §56:8-1 *et seq*. The Court has

considered the motion [D.E. 51], oppositions [D.E. 56 and 57], reply [D.E. 63], sur-reply [D.E. 64] and applicable law.[1] The Court held oral argument on October 2, 2017. For the reasons set forth herein, the Court will grant in part and deny in part Defendants'/Third-Party Plaintiffs' motion to amend.

**II.     Background**

Plaintiff, World Express & Connection, Inc. ("World Express"), filed this action on November 18, 2015, seeking to recover monies for storage and other related charges allegedly due and owing by Defendants/Third-Party Plaintiffs, Crocus Investments, LLC ("Crocus LLC"), Crocus FZE, Alexander Safonov ("Safonov"), and Middle East Asia Alfa FZE ("Middle East Asia") (collectively "Third-Party Plaintiffs"). See, Complaint, D.E. 1. Plaintiff is a warehouse and storage facility "offering paid storage services for automobiles, boat, and other vehicles. . ." Id. at ¶ 7. Defendants/Third-Party Plaintiff Safonov is the owner of Crocus LLC and Crocus FZE, and co-owner of Middle East. See Third-Party Complaint, D.E. 17, at ¶ 1-5. The alleged charges arise out of Third-Party Plaintiffs' storage of three boats: a 2011 Monterey 204, a 2009 Chaparral 190 SSI, and a 2010 Formula 34 PC, at World Express' warehouse. See generally, Complaint, D.E. 1.

Third-Party Plaintiffs filed a Third-Party Complaint on September 21, 2016 against Marine Transport Logistic, Inc. ("Marine Transport"), Royal Finance Group, Inc. ("Royal Finance"), Aleksandr Solovyev ("Solovyev"), Car Express & Import Inc. ("Car Express"), Alla Solovyeva ("Solovyeva"), Raya Bakhirev ("Bakhirev"), Roman Chernin ("Chernin"), and Vadim

---

[1] On October 1, 2017, Defendants and Third-Party Plaintiffs submitted another letter memorandum in still further support of their motion to amend. D.E. 70. Counsel for the Defendants and Third Party Plaintiffs submitted the memorandum without the Court's authorization and in violation of L. Civ. R. 7.1. Although the Court considered the submission in adjudicating this motion, counsel is admonished in the future not to submit unauthorized briefs or memoranda without prior authorization of the Court.

Alper ("Alper") (collectively, "Third-Party Defendants")[2]. See generally, Third-Party Complaint, D.E. 17. The Third-Party Complaint alleges fraud, civil conspiracy, breach of contract, unjust enrichment, *quantum meruit* and account stated. Id. Third-Party Plaintiffs allege that Marine Transport is an "international shipping company, providing freight forwarding and logistics services to customers on a worldwide basis." Third-Party Complaint, D.E. 17, at ¶ 56. Third-Party Plaintiffs further allege that Car Express is an "automobile dealer which is licensed for the purposes of purchasing automobiles at auctions." Id. at ¶ 60. Finally, Third-Party Plaintiffs allege that Royal Finance "issues invoices and collects payments for shipping, delivery charges, commissions, and other fees from automobile dealerships and personal shippers who have used the services of [Marine Transport] and [World Express]." Id. at ¶ 61.

Additionally, Third-Party Plaintiffs allege that Solovyev is the officer and shareholder of Car Express and Royal Finance, and had signatory authority and conducted the day-to-day operations of both entities. Third-Party Complaint, D.E. 17, at ¶ 14-21. Third-Party Plaintiffs also allege that Solovyev is the owner, shareholder, and General Manager of Marine Transport. Id. at ¶ 22-25. Similarly, Third-Party Plaintiffs allege that Alla Solovyeva is Solovyev's wife and has signatory authority and direct control over Marine Transport and World Express. Id. at ¶ 26-29 and 34-38. Bakhirev is alleged to be an officer and shareholder of World Express and an account/payroll specialist employed by Marine Transport. Id. at ¶ 39-44. Third-Party Plaintiffs also allege that Chernin is an officer and shareholder of World Express. Id. at ¶ 45-48. Alper is alleged to be the Director of Operations and the in-house legal counsel of Marine Transport. Id. at ¶ 49-53.

---

[2] Counsel for Plaintiff also represents Third-Party Defendants Marine Transport, Royal Finance, Car Express, Solovyev, Solovyeva, Bakhirev and Chernin. Counsel for Third-Party Defendant Alper is separately represented but joins Plaintiff/Third-Party Defendants in their opposition. See, D.E. 57. As such, the Court will treat Plaintiff and all Third-Party Defendants as one, collectively referring to them as "Third-Party Defendants."

In their initial Complaint, Third-Party Plaintiffs allege that they purchased the three boats from Solovyev for export to Dubai, where Third-Party Plaintiffs would repair them. Third-Party Complaint, D.E. 17, at ¶ 94-97 and 117-118. Although three boats were purchased and intended to be shipped to Dubai, only the Monterey and Chaparral were actually shipped overseas. Id. at ¶ 110 and 119-125. Third-Party Plaintiffs allege that the Third-Party Defendants claimed they could not ship the Formula boat because a suitable trailer had not yet been acquired. Id. at ¶ 119-121.

Third-Party Plaintiffs also allege that parties entered into a subsequent business arrangement in which Solovyev would send Third-Party Plaintiffs two luxury cars, a Porsche and Mercedes, to be repaired by Third-Party Plaintiffs in Dubai, then sold for profit. Third-Party Complaint, D.E. 17, at ¶ 98-108. Third-Party Plaintiffs state that the Third-Party Defendants agreed to ship the Monterey and Chaparral back to the U.S. and store the boats for free in their warehouse, while continuing to store the Formula for free. Id. at ¶ 111-116. However, Third-Party Plaintiffs allege Andrey Tretiykov, a former employee at Middle East, stole the two cars in Dubai at the direction of Solovyev. Id. at ¶ 126-128.

On June 15, 2015, Third-Party Plaintiffs Crocus LLC and Crocus FZE filed a related action before the Federal Maritime Commission against Marine Transport, Royal Finance and Solovyev, alleging violations of the Shipping Act of 1984. Verified Complaint, Declaration of Eric Chang ("Chang. Decl."), D.E. 56-2, Ex. 1; see also Complaint, D.E. 1, at ¶ 19. Third-Party Plaintiffs allege in that action that Solovyev, via Marine Transport and Royal Finance, violated the Shipping Act by overcharging Third-Party Plaintiffs for services related to the transport and storage of the three boats, and for acting "in essence as an ocean transportation intermediary without holding a valid license to do so." Id. at ¶ 28-29. This action was dismissed on

jurisdictional grounds by the Presiding Officer who found that Crocus LLC and Crocus FZE failed to establish that Marine Transport undertook responsibility for the ocean carriage of the three boats. See generally, Federal Maritime Commission Initial Decision, Chang Decl., D.E. 56-3. Third-Party Plaintiffs filed an appeal on March 13, 2017 and the appeal is pending.

Third-Party Plaintiffs now seek to amend their Third-Party Complaint to include a claim under the NJCFA and additional factual allegations in further support of their existing claim of fraud. Movant's Br., D.E. 51-1, at 4. Third-Party Plaintiff state that these additional factual allegations were gleaned from a subpoena for a deposition upon written questions served upon the online warehouse "Copart." Movant's Br., D.E. 51-1, at 10; see also, Declaration of Marcus A. Nussbaum ("Nussbaum Decl."), D.E. 51-2, Ex. B. Third-Party Plaintiffs allege that Copart is an online company that conducts auctions of vehicles and boats. Amended Third-Party Complaint, D.E. 51-2, at ¶ 91.

Third-Party Plaintiffs argue that the documents and sworn testimony gathered as a result of the subpoena show that the invoices Solovyev allegedly provided to Third-Party Plaintiffs at the time of the purchase and sale of the boats are fake. Movant's Br., D.E. 51-1, at 10 (stating "the subpoena resulted in the production of documents and sworn testimony by Copart's record custodian who has confirmed that the Copart invoices which Defendants/Third-Party Plaintiffs claim were provided to them by Solovyev to at the time of the purchase and sale of the boats, are fake."). Third-Party Plaintiffs allege that Solovyev purchased the boats by way of advanced payments made by Royal Finance on behalf of Third-Party Plaintiffs. Amended Third-Party Complaint, D.E. 51-2, at ¶ 95-98. Third-Party Plaintiffs were then directed by Solovyev to make "lump sum" payments directly to Royal Finance for the cost of the boats and other related fees. Id. They further allege that, based on a comparison with the recently obtained Sales Receipts

issued by Copart, Solovyev inflated the purchase price of the boats and pocketed the difference. Id. at ¶ 100-103, 112-116 and 163-170. Third-Party Plaintiffs allege that Royal Finance never paid any monies to Copart, nor did they pay for the delivery of the boats to Marine Transport's warehouse or for the trailer, loading, and shipment of the boats to Dubai. Id. ¶ 104-110; 117-123; 154-160 (relating to an invoice allegedly issued by Royal Finance to Third-Party Plaintiffs for fees relating specifically to the shipment to and storage of the Monterey and Chaparral boats in Dubai); and 171-178.

### III. Analysis

The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." Karlo, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In this case, the Court issued a Scheduling Order on March 31, 2017, [D.E. 43], which gave the parties until July 21, 2017 to add new parties or amend pleadings. Defendants filed its motion for leave to amend the Third-Party Complaint on July 21, 2017, within the time allowed by the scheduling order. Therefore, Rule 15 governs the instant motion.

Under Fed. R. Civ. P. 15, a party may amend the complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory

motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Here, Third-Party Defendants assert that the additional factual allegations and claim under the NJCFA are futile because Third-Party Plaintiffs are not consumers under the NJCFA and thus do not have standing, and that they are judicially estopped from now claiming to be a consumer under the NJCFA.

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); Harrison Beverage, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. Id. at 210–11; West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010); see also Iqbal, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

**a. Proposed Claim under NJCFA**

It is well established that one must be a "consumer" to have standing to sue under the statute. See City Check Chasing, Inc. v. National State Bank, 122 N.J. 389 (1990) (citing Hundred East Credit Corp. v. Eric Schuster, 212 N.J. Super. 350, 354-357 (App. Div. 1986), certif. denied, 107 N.J. 60, (1986)). The NJCFA does not define who, or what, qualifies as a consumer. However, courts interpreting the NJCFA have opined on this issue. For example, in Windsor Card Shops, Inc. v. Hallmark Cards Inc., the court defined a consumer as "one who uses (economic) goods and

so diminishes or destroys their utilities." 957 F. Supp. 562, 567 (D.N.J. 1997); See also, City Check Cashing Inc. v. National State Bank, 244 N.J. Super. 304, 309 (App. Div. 1990), certif. denied, 122 N.J. 389 (1990). A business entity can qualify as a member of the public and consumer when it acts as a consumer. See J&R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1273 (3d Cir. 1994) (citing New Jersey cases that hold that purchasers of yachts, tow trucks, computer peripherals, and prefabricated wall panels are all "consumers" under the NJCFA). However, a commercial reseller of goods is not a consumer and cannot sue under the NJCFA. Conte Bros. Auto. v. QuakerState-Slick 50, Inc., 992 F. Supp. 709, 716 (D.N.J. 1998) (dismissing NJCFA claim brought by a commercial reseller.); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 469 (D.N.J. 1998) (noting that New Jersey courts have held that a company that purchases a product for resale is not a consumer because it has not diminished or destroyed the product through use). The Court should look to the character of the transactions and not the identity of the purchasers. J&R Ice Cream, 31 F.3d at 1273.

### i. The Boats

Third-Party Defendants argue that Third-Party Plaintiffs lack standing under the NJCFA because they intended to resell the boats and thus are commercial resellers, not consumers. Third-Party Defendants point to numerous occasions where Third-Party Plaintiffs claim they intended to resell the boats, stating that "[Third-Party Plaintiffs] concede in their allegations that [they] were resellers purchasing the boats for subsequent *repair and resale."* Third-Party Defendants' Opposition Br. ("Opp'n Br."), D.E. 56. The proposed Third-Party Complaint confirms the point. See Amended Third-Party Complaint, D.E. 51-2, at ¶ 90 ("Defendants/Third-Party Plaintiffs engaged Solovyev. . . to purchase used boats and boat trailers in the United States and ship the boats and trailers to Dubai for repair and resale."); Id. at ¶ 148 ("Crocus

[FZE] exported the Chaparral and Monterey to Dubai using the services of [Marine Transport] for purposes of having the boats repaired and then returned to the United States for sale or rental to third-parties."). Third-Party Defendants even adopt this position in their moving papers. See Movant's Br., D.E. 51-1, at 7 (stating the "Monterey and Chaparral together with their trailers were transported by [Marine Transport] to Dubai to be repaired and sold."); Id. at 8 (stating that "after the two boats could not be sold in Dubai, Solovyev offered [Third-Party Plaintiffs] to import them back into the United States to [Marine Transport's] warehouse, at which time Solovyev would assist with the sale or rental of the boats in the U.S.").

Third-Party Plaintiffs respond that they are consumers within the meaning of the NJCFA because they intended to resell *or* rent the boats. See generally, Third-Party Plaintiffs' Reply, D.E. 63. Third-Party Plaintiffs, however, cite no case law for this novel proposition.[3] Whether the Third-Party Plaintiffs qualify as consumers under the NJCFA is a fact specific analysis; the "applicability hinges on the nature of a transaction, requiring a case by case analysis." Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 13 (App. Div. 2006) (citation omitted). In this case, Middle East purchased the boats. Amended Third-Party Complaint, D.E. 51-2, at ¶ 99 (stating "In or about April of 2013, [Middle East] purchased a 2011 Monterey 204 boat . . ."); Id. at ¶ 111 (stating "On or about May 22, 2013, [Middle East] purchased a 2008 Chaparral 190 SSI boat . . ."). Middle East is co-owned by Third-Party Plaintiff Safonov and Oleg Bortsov. See Deposition of Alexander Safonov Before the Federal Maritime Commission ("Safonov Dep."), D.E. 56-5, at 18:7-9 and 17:4-6. As Safonov states under oath in his deposition before the Federal Maritime Commission, Middle East is in the business of the "[r]epair and sale of

---

[3] Third-Party Plaintiffs do cite to two cases holding that a commercial buyer can still be a consumer for the purposes of the NJCFA. See Opp'n Br., D.E. 63, at 9-10. However, the cases cited to miss the point; Third-Party Defendants are not arguing that business entities cannot be consumers under the NJCFA, but rather that Third-Party Plaintiffs, because they intended to resell the boats, cannot be considered consumers.

motorboats." Safonov Dep. at 17:7-13. In fact, Safonov's own testimony makes it clear that Middle East's primary intention was to sell the boats and only decided to rent the boats after they were unable to sell them. Safonov states in his deposition that Middle East initially intended to sell boats. Id. at 21:21-22. He then states that all the repairs to the boats were completed by March 1, 2014 in anticipation of a planned exhibition of boats. Safonov Dep. at 51:7-17 ("[a]ll the boats were repaired and ready for sale by March 1st, 2014, because . . . there was planned or scheduled some exhibition of boats . . ."). Safonov further testifies they were unable to sell the boats at the exhibition. Safonov Dep. at 51:18-25. He then states that their intent was then "[t]o ship them to United States, so we can use them as rentals or charter . . .," having been unable to sell them at the exhibition. Safonov Dep. at 52:13-16.

It is clear from Safonov's own admission that the primary intent of Middle East was to sell the boats. It was not until after they were unable to sell the boats in Dubai that they decided to ship the boats back to the U.S. to rent or charter. As the court in Lithuanian Commerce held, a reseller cannot be a consumer under the NJCFA because it has not diminished or destroyed the product through use. 179 F.R.D. 450, 469 (D.N.J. 1998). It is clear in this case that Third-Party Plaintiffs are resellers. Not only have they not diminished or destroyed the boats, they have improved them through repair for the purpose of being sold. Their subsequent plan of renting the boats only came about because of their inability to sell the boats, as Safonov states in his deposition before the Federal Maritime Commission. See generally, Safonov Dep., D.E. 56-5. As Third-Party Defendants state, "[a]n unsuccessful reseller is still a reseller." Third-Party Defendant Sur-Reply, D.E. 64-1, at 4. Third-Party Plaintiff's argument that they are consumers because of their intent to rent holds no merit; an ancillary intent to rent does not negate the

primary purpose of resale. [4] The Court finds that Third-Party Plaintiffs own allegations of their intent to resell the boats cannot qualify them as consumers under the NJCFA. Accordingly, the Court finds that the amendment would be futile.

    **ii.    The Automobiles**

Third-Party Plaintiffs also allege they are consumers in their proposed claim under the NJCFA with respect to the Porsche and Mercedes automobiles. Amended Third-Party Complaint, D.E. 51-2, at ¶ 276-286 (referring to the automobiles as "'merchandise' within the meaning of the [NJCFA]."). Third-Party Defendants again argue that Third-Party Plaintiffs cannot be consumers under the NJCFA because the cars were intended to be sold for profit. In this case, Third-Party Plaintiffs very clearly state that the cars were to be repaired and sold for profit only. See Amended Third-Party Complaint, D.E. 51-2, at ¶ 126 (stating "[o]n or about August 13, 2013, [Solovyev] and Alper proposed a business arrangement to [Third-Party Plaintiffs] whereby [Solovyev] and Alper would export two automobiles. . . to Dubai via [Marine Transport] directly to a facility controlled by Middle East so that said vehicles could be *repaired and subsequently sold for profit.*")(emphasis added). At no point do Third-Party Plaintiffs claim this business arrangement between them and the Third-Party Defendants included anything other than selling the cars for profit. There is nothing in the record indicating any intent, primary or not, to rent the cars after repairing them. This clearly disqualifies Third-Party Plaintiffs as consumers under the NJCFA with regards to the automobiles. As such, the Court finds that the amendment would be futile.[5]

Third-Party Plaintiffs motion for leave to amend the Third-Party Complaint to include a

---

[4] The Court does not hold as a matter of law that a business entity whose primary mode of business is rentals cannot be a consumer under the NJCFA. The Court merely finds here that Third-Party Plaintiff's auxiliary intent to rent cannot overcome their primary purpose to resell the boats, making them resellers and not consumers.
[5] Accordingly, the Court need not reach the issue of judicial estoppel.

claim under the NJCFA is accordingly denied.

  b. **Additional Factual Allegations**[6]

  Third-Party Plaintiffs also seek to amend their Third-Party Complaint to include additional factual allegations in support of their fraud claim (Count I). See Movant's Br., D.E. 51-1, at 4. Under Rule 15(a), leave to amend is generally granted where, during the course of discovery, a party discovers "new evidence." See, e.g., Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1460 (D.N.J. 1986) (granting motion to amend upon discovery of new evidence where it did "not appear that the amendment would cause undue delay or that plaintiffs have a dilatory motive"). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

  Here, Third-Party Plaintiffs state that these additional factual allegations are gleaned from a subpoena to testify at deposition upon written request served upon Janet Wright, a Legal Secretary at Copart, the online auction company from which Solovyev allegedly bought the three boats from on behalf of Third-Party Plaintiffs. See Nussbaum Decl., D.E. 51-2, Ex. B. Third-Party Plaintiffs argue that the documents and testimony received as a result of the subpoena show that the invoices provided to Third-Party Plaintiffs by Solovyev for the purchase and sale of the boats, as well as the invoices showing Solovyev purchased the Porsche and Mercedes from Copart, were fake. Id. at 10.

  Third-Party Plaintiffs allege that these fake invoices were used to misrepresent the actual

---

[6] Third-Party Plaintiff also attaches ¶¶ 212-217 to their proposed amended complaint, which appears to pertain to several motorboats and an automobile. However, Third-Party Plaintiff provides little clarity in its pleadings or moving papers as to where these additional motorboats and car factor into its common law fraud claim. As such, the Court disregards them as surplus. The following discussion pertains to the remaining additional factual allegations only.

prices paid by Car Express to Copart for the boats so Solovyev could pocket the difference. Amended Third-Party Complaint, D.E. 51-2, at ¶ 100-104 (stating that the Sales Receipt issued by Copart for the Monterey boat is less than the sum Third-Party Defendants have listed in their invoice to Third-Party Plaintiffs). Third-Party Plaintiffs further allege that Royal Finance never made payments on behalf of Third-Party Plaintiffs to anyone for the services listed in the invoices. Id. at ¶ 98-123 and 155-160. For example, Third-Party Plaintiffs allege that Royal Finance charged them a "commission fee" for services they did not render because they never actually advanced payments on behalf of Third-Party Defendants. Id. at ¶ 108 (stating "[Royal Finance] unlawfully charged a 'Commission' of $400 for services that it did not render in that it did not 'advance payments on behalf of customers to Copart and to other companies' as represented by Solovyev."). Third-Party Plaintiffs additionally allege that Solovyev made fake invoices showing he had purchased the Porsche and Mercedes in order to induce Third-Party Plaintiffs to accept the cars at their facility in Dubai and being repairs on them. Id. at ¶ 132 (stating "[i]n furtherance of the fraudulent representation made regarding ownership of the Mercedes and Porsche and in order to induce Defendants/Third-Party Plaintiffs to accept receipt of the Mercedes and Porsche in Dubai, Solovyev created false and fraudulent invoices which purported to indicate that the cars were purchased from the online auto auction warehouse known as 'Copart'.").

  Third-Party Defendants do not address these additional factual allegations in their opposing papers [D.E. 56] or their sur-reply [D.E. 64]. The Court can find no reason these additional factual allegations should not be included. Third-Party Plaintiffs have shown newly discovered evidence in the form of documents and testimony produced in response to a subpoena. See generally, Nussbaum Decl., D.E. 51-2, Ex. B. These additional factual allegations

would not cause any undue delay or prejudice as they are in further support of an already existing claim and the motion for leave to amend was timely filed pursuant to the Scheduling Order. Moreover, Third-Party Defendants voice no articulated objection to the specific factual allegations. Finally, there is no indication that these factual allegations rise to any of the specified situations warranting a court to deny leave to amend under R. 15(a)(2). Accordingly, the Court sees no reason these factually allegations should not be included.[7]

### IV.     Conclusion

For the foregoing reasons, Third-Party Plaintiff's motion for leave to amend the Third-Party Complaint [D.E. 51] is granted in part and denied in part. Third-Party Plaintiff's motion for leave to amend to add additional factual allegations in support of their fraud claim is granted to the extent discussed above. Third-Party Plaintiff's motion for leave to add a claim under the New Jersey Consumer Fraud Act is denied. An appropriate order will accompany this opinion.

                                            **s/ Michael A. Hammer**
                                            **UNITED STATES MAGISTRATE JUDGE**

Dated: October 10, 2017

---

[7] At oral argument, Third-Party Defendant's counsel questioned whether the allegations against Alla Solovyeva, Raya Bakhirev, and Roman Chernin are sufficient under Federal Rule of Civil Procedure 9(b) to set forth a fraud claim. The Court asked Third-Party Plaintiff's counsel to review the proposed pleading and determine whether those parties wished to proceed against Solovyeva, Bakhirev, and Chernin, or whether they would agree to voluntarily dismiss those individuals without prejudice. By letter filed on October 6, 2017 [D.E. 73], Third-Party Plaintiff stated that it would agree to dismiss Chernin subject to Chernin's agreement to provide certain discovery, but would not agree to dismiss Solovyeva and Bakhirev without additional discovery. In any event, a comparison of the existing Third-Party Complaint and the proposed pleading reveals that the fraud claims against Chernin, Solovyeva, and Bakhirev already reside in the existing Third-Party Complaint. See, e.g., Third-Party Complaint, D.E. 17, at ¶¶ 144, 145, 153-156. Because the Third-Party Plaintiffs do not seek to add those allegations to the proposed amended pleading, the Court will take no action on them at this time. The parties will meet and confer on whether Plaintiffs wish to take the Defense up on its offer to dismiss the claims as to Chernin subject to the discovery requested by the Defense, subject to the discovery limitations imposed by the Court's Order issued on this date.