| | |
|---|---|
| WORLD EXPRESS & CONNECTION, INC, <br><br>                                         Plaintiff. <br><br> — against — <br><br> CROCUS INVESTMENTS, LLC, <br> CROCUS FZE, <br> ALEXANDER SAFANOV, <br> MIDDLE EAST ASIA ALFA FZE. <br><br>                                         Defendants. <br> ------------------------------------------------------------------- <br> CROCUS INVESTMENTS, LLC <br> CROCUS FZE, <br> ALEXANDER SAFANOV, <br> MIDDLE EAST ASIA ALFA FZE. <br><br>                                         Third-Party Plaintiffs. <br><br> — against — <br><br> MARINE TRANSPORT LOGISTICS, INC., <br> ROYAL FINANCE GROUP. INC., <br> CAR EXPRESS & IMPORT INC., <br> ALEKSANDR SOLOVYEV, <br> ALLA SOLOVYEVA, <br> RAYA BAKHIREV <br>                                         Third-Party Defendants. | <br><br><br><br><br><br><br><br><br><br><br> 15-CV-8126 (KM)(MAH) <br><br> PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL MEMORANDUM |

   As a procedural matter, Plaintiff filed its post-trial brief on May 5, 2025.  The Text Order of May 9 set Defendants' deadline for its post-trial brief of May 12 and said that "The parties may file their respective oppositions on or before May 26, 2025."  I understood this to mean that any response would be optional, and having read Defendants' post-trial brief, I thought that I would find myself simply repeating what I had already written, especially in light of the fact that none of the statements made in the Defendants' brief had any citations to the record and were simply made in narrative form.  For example, in their brief on page 2 at footnote one, it says: "All citations to the trial transcript and all relevant evidence and exhibits admitted into the record

1

are set forth below, in detail, with their descriptions in the table at the end of this Post-Trial Brief." However, when looking at this table on page 17 of their brief, the citations are not linked to anything in what was talked about in the body of the brief above.  For example, the first row of page 17 references the transcript, cites to the pages of the transcript, and then paraphrases the testimony (not quoting) under the "content" heading…  However, it is not clear where in their brief this citation relates to as part of their argument.

Another significant problem is that the Defendants' post-trial brief directs this Court to testimony and items that were deemed inadmissible.  For example, the chart on page 17 of their brief, 3rd row, says under Content: "Safonov's discovery of Formula boat listed for sale, contradicting Solovyev." However, when looking at Tr. at 378, this Court found this hearsay inadmissible; therefore, what Defendants are doing via the content portions in their chart is misleading.  The following exchange corroborates this.  Tr. at 381:

> The Court: If what he's going to do is testify as to basically what he learned form the website listing, it's a noble attempt to get around –
> Mr. Treyster: Thank you.
> The Court: -- the hearsay rule, but an inadmissible one nonetheless because you're offering it for the truth of the matter asserted.
> Mr. Treyster: I am aware of what I'm doing, Judge.
> The Court: Right.

I would respectfully submit that the Defendants' entire post-trial brief should not be given much weight as not only does it simply contain arguments without making any citations to anything in the record, but it also attempts to mislead the Court by paraphrasing testimony, including inadmissible testimony, in a manner that would erroneously suggest accuracy and admissibility.  In any case, I will try to address some main points without excess repetition…

Defendants say on page 2 of their brief: "Plaintiff offered no evidence of any contract with Defendants or any communication in which Defendants agreed to pay World Express for

2

storage." As the following reveals, this is simply not true and Crocus, having previously been engaged with international shipping, including with the Plaintiff and MTL, was aware of the storage policy as contained in Federal Maritime Commission Tariffs filed by MTL. Exhibit 1 in evidence is an example of such a tariff that lists $20/day for storage of boats. It then follows that, of course, Plaintiff had a reasonable expectation of payment beyond the 30 days of free storage that this Tariff contemplates as Plaintiff is under no obligation to store boats and vehicles free of charge for years.

What is also important to note about Exhibit 1 is that Section C, entitled "Warehouse Storage" notes the following: "Carrier's CFS/CY may be a designation warehouse" and MTL used World Express as its designated warehouse. "CY" means container yard.

Mr. Solovyev testified as follows about World Express being MTL's container yard when discussing Plaintiff's Exhibit 3: "As far as I can see, this invoice belong to the company which invoice Crocus – company Crocus because at that time invoice in August '13 they are for storage of this boat at the yard of MTL company." *Tr*. at 20-21.

Alla Solovyeva on behalf of MTL further corroborated this at Tr. at 471-472:

> Q. Okay. Do you have your own lot where you store boats?
> A. When? At what time?
> Q. At that time, I didn't.
> Q. You didn't have any other lots?
> A. Well, sometimes I rented extra lot because World Express did not have enough space.
> Q. Did you put all three boats on the WEC lot?
> A. Yes.

Furthermore, The lease agreement of the Plaintiff World Express, in evidence as Exhibit 2, describes one of the permitted services of World Express on page 1 as being for "storage."

It is being submitted that the purpose of these tariffs is to put shippers or customers on notice as to what they are being charged for and for what service, and by agreeing to have MTL

arrange for booking to export boats and automobiles, Defendants agreed to the services and charges as listed in these tariffs.

Moreover, a contract is not necessary under the quantum meruit theory. "Quantum meruit applies when 'one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust." *New Jersey Land Title Association v. Rone*, 458 N.J. Super. 120, 132 (App. Div. 2019).

As to the fraud/conspiracy allegations, I would again like to stress what I had pointed out in the Plaintiff's post-trial brief. First, as to the boats, the Monterey and Chapparal boats were successfully sent to Defendants in Dubai, without any theft, and the reason Crocus sent them back to New York is because they could not sell them in Dubai as the following confirms:

Tr. 70-71

> Q. Were those two boats also repaired in Dubai.
> A. Yes.
> Q. Okay. Were they sold in Dubai?
> A. No.
> Q. Do you know any particular reason why they were not sold in Dubai?
> A. I don't remember exactly. I know we put them out for sale, but we couldn't sell them.
> Q. Okay. So after you couldn't sell them, what happened next with those two boats?
> A. We shipped them to New York to Solovyev's Marine Transport Logistics.
> Q. Okay. And who made the arrangements for the return of the boats back to the United States.
> A. Tretiyakov.
> Q. Okay. And who did Tretiyakov make those arrangements with?
> A. With me.

Tr. at 385:

> Q. Okay. So the Monterey and the Chaparral boat came to you in Dubai safely, correct?
> A. Yes.
> Q. Nobody stole them from you, correct?
> A. No.
> Q. So why did you send them back to New York?

>A. Because business in Dubai at that time was slowing down and I wanted to move my business to a different place, to Florida.

As to the subject vehicles, as was pointed out in the Plaintiff's post-trial brief, there is absolutely no evidence that Defendants Alla Solovyeva, Raya Bakhirev, or MTL entered or induced Mr. Safonov into any agreement concerning the boats, there is absolutely no indication that Alla Solovyev, Raya Bakhirev, and MTL entered or induced Mr. Safonov into any agreement concerning the subject vehicles.  The subject vehicles were lawfully exported out of the United States in compliance with all regulations (Plaintiff's Exhibit 5), and Crocus admitted to receiving such in Dubai.

>Tr. at 478 (Discussing Plaintiff's Exhibit 5)

>>Q. Can you please read in the middle of the page, the paragraph that starts with "These commodities"? Do you see it?
>>A. Yes.  It's 2006 Mercedes class SL65 and 2011 Porsche Panamera.
>>Q. Let me read.  After the cars are listed, it says: "These commodities technology or software were exported from the United States in accordance with the export administration  regulations." What does that mean to you?
>>A. That this document, everything was submitted to Maersk Line and to U.S. Custom, that was done properly within regulation.

>Tr. at 127 (Mr. Safonov's admissions).

>>Q. Mr. Safonov, you testified that Mr. Tretiyakov stole the vehicles, you went to the police complaining of Mr. Tretiyakov.  What does that have to do with – and I will start first with Alla Solovyeva, the defendant in your counterclaim?
>>A. I never contacted Alla Solovyeva about this.
>>Q. Right.  So why are you suing her for fraud in connection with these vehicles?
>>A. Because she works for MTL, Marine Transport Logistics.
>>Q. Is that the only reason why you brought this case against Ms. Solovyeva personally?
>>A. I filed the case against her and against her company.
>>Q. What about Raya Bakhirev? What does she have to do with the vehicles being stolen, as you say?
>>A. I never met her.  I heard about her only once the first time when I was here in the U.S.
>>Q. And why are you suing MTL, Marine Transport Logistics, for something Mr. Tretiyakov had done in Dubai, namely stealing the vehicles?
>>A. I don't understand the question.

> Q. How did these vehicles up in in Dubai, the Porsche and the Mercedes?
> A. Solovyev shipped them.
> Q. Right. So Solovyev shipped them through MTL, correct?
> A. Yes.
> Q. And they came to you, you saw them in Dubai, correct?
> A. Yes.
> Q. So how can you say that these people who are in New Jersey, that they stole these vehicles from Dubai? They shipped the vehicles to you. You saw them.
> A. Cars were stolen by Tretiyakov.

As to Aleksandr Solovyev, Mr. Safonov then goes on to describe an agreement that they had (again not mentioning Dmitry Alper even though Mr. Safonov alleged in ¶98 of his third party complaint that Alper and Aleksandr Solovyev induced him into an agreement concerning the subject vehicles); however, Mr. Safonov provides an explanation that is implausible and not credible as to why he could provide details of such an agreement before this Court during the trial, yet when he was deposed approximately 7 years earlier, he could not recall a single detail.

<u>Tr. 132-133</u>

> Q. So you have given us some details about this arrangement? Do you remember when I took your deposition, Mr. Safonov, in this case on October 25 of 2018?
> A. Just a second. With regard to those cars?
> Q. Yes.
> A. So the agreement also stated that if there will be more money than 50,000 for one car and 5,000 for another car, that money will be mine.
> Q. So my question was – and thank you for those additional details about your agreement. We're now in 2025. I deposed you in 2018, October 25. Do you remember that?
> A. We had several depositions.
> Q. And do you remember me asking you questions about this Allegation Number 98 that I'm asking you today? Do you remember that?
> A. Well, I don't remember that, but you can ask me anything you want.
> Q. **I'd like to quote the following. So on page 42, I ask you – this is in 2018. "So help us with the details. What happened on August 13th of 2013? You say – "If I remember I would say, but the essence is true of this allegation." Then I ask you: "What essence was true specifically?" You say: "I do remember that those two cars arrived into Dubai." Then I say: "But is it accurate to say you don't remember Alex Solovyev proposing any business arrangement with respect to these vehicles, correct?" And you say: "I physically can't remember everything."**

> So my question is, how is it that you gave us those details now but you couldn't give me those details in 2018, when I asked you?
> A. That deposition took place in the morning. And when I left that meeting, I started going back, and I remembered everything that I told you about now.

As to the Copart Subpoena response, I would like to take a moment to draw the Court's attention to the internal and external inconsistency. First, I would like to point out that there was no witness produced to authenticate and answer questions about any of the documents in this packet, including about the following major inconsistencies.

Page 3, (Defendant's Bates No. 0006) says at the top of the page: "Car express did not purchase the VIN that is Lot 26975854. The correct bill of sale for Lot 26998392 is attached. First of all, the invoice in question (found at Def. Bates No. 0018) is for Lot 26957654, not 26975854. Furthermore, it is not clear why Copart's response says "The correct bill of sale for Lot 26998392 is attached." What does this lot have anything to do with these vehicles? Lot 26998382 is for the Formula Boat that was purchased by Car Express from Copart. (See Def. Bates No. 0012 and 0003).

I would further point out that there is no evidence that any of the purportedly fake invoices were made by any of the Third Party Defendants or that they were sent to any of the Third Party Plaintiffs. It appears that this Court agreed with this at Tr. 100-102 when the purportedly fake invoice was attempted to be moved in evidence.

May 28, 2025

Respectfully submitted,

*Garry Pogil*
_____
Garry Pogil (*Attorney for Plaintiff/Third Party Defendants*)
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
Tel: 212-626-6825
Emal: garry.pogil@gmail.com